TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Chief, National Security Division
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorney
Chief, Public Corruption and Civil Rights Section
        1500/1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:  (213) 894-8452/3667
        Facsimile:  (213) 894-0141
        E-mail:    ian.yanniello@usdoj.gov
                   thomas.rybarczyk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

3/2/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ KM _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>JUAN CARLOS ARAGON,<br><br>             Defendant. | No. CR 2:26-cr-00103-SSS<br><br>PLEA AGREEMENT FOR DEFENDANT<br>JUAN CARLOS ARAGON |

   1.   This constitutes the plea agreement between JUAN CARLOS
ARAGON ("defendant") and the United States Attorney's Office for the
Central District of California (the "USAO") in connection with the
investigation of a bribery scheme.  This agreement is limited to the
USAO and cannot bind any other federal, state, local, or foreign
prosecuting, enforcement, administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

   2.   Defendant agrees to:

        a.   Give up the right to indictment by a grand jury and,
at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Bribery of a Public Official, in violation of 18 U.S.C. § 201(b)(2)(B).

b.   Not contest the Factual Basis agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest the Factual Basis agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to

and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.    At the time of sentencing, provided that defendant complies with paragraph 2 and the other provisions of this agreement up through the time of sentencing, recommend a 4-level downward variance in offense level based on the factors set forth in 18 U.S.C. § 3553(a)(1)-(7) and the unique facts and circumstances of this case.

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, Bribery of a Public Official, in violation of Title 18, United States Code, Section 201(b)(2)(B), the following must be true: (1) Defendant was a public official; (2) defendant demanded, sought, received, accepted, or agreed to receive or accept something of value in return for being influenced to commit or allow a fraud on the United States; and (3) defendant acted corruptly, that is, intending to be influenced to commit or allow a fraud on the United States.  A public official acts "corruptly" when he or she accepts or receives, or agrees to accept or receive, a thing of value, in return for being influenced with the intent that, in exchange for the thing of value, some act would be influenced.

<u>PENALTIES</u>

5.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 201(b)(2)(B), is: 15 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross

gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported

from the United States.  Defendant may also be denied United States
citizenship and admission to the United States in the future.
Defendant understands that while there may be arguments that
defendant can raise in immigration proceedings to avoid or delay
removal, removal is presumptively mandatory and a virtual certainty
in this case.  Defendant further understands that removal and
immigration consequences are the subject of a separate proceeding and
that no one, including his attorney or the Court, can predict to an
absolute certainty the effect of his conviction on his immigration
status.  Defendant nevertheless affirms that he wants to plead guilty
regardless of any immigration consequences that his plea may entail,
even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

9.    Defendant admits that defendant is, in fact, guilty of the
offense to which defendant is agreeing to plead guilty.  Defendant
and the USAO agree to the statement of facts provided below and agree
that this statement of facts is sufficient to support a plea of
guilty to the charge described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 13 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

<u>C&C Power Solutions LLC Bribery Scheme</u>

Beginning in or around 2017 and continuing until on or about
February 5, 2020, in Ventura County, within the Central District of
California, and elsewhere, defendant, a public official, namely,
Deputy Program Manager at Mobile Utilities Support Equipment group
("MUSE") and a Navy Career Analyst, directly and corruptly demanded,

sought, received, and accepted something of value, namely, cash and payments to a club soccer team ("Club Soccer Team") and a sporting goods company ("Sporting Goods Company"), in return for being influenced in the performance of an official act and to commit and aid in committing, colluding in, and allowing, a fraud on the United States, namely, falsely billing the Navy, bid-rigging, and falsely certifying and causing others to falsely certify completion contracts for the benefit of his co-conspirator, CORY TAYLOR WRIGHT ("WRIGHT"), and WRIGHT's company, C&C Power Solutions LLC ("CCP").

More specifically, defendant defrauded the Navy by, among other things, doing the following:

- In March 2017, defendant directed Company 1 to pay a $10,283.46 invoice from CCP for "Generator repair parts" purportedly for the Navy, even though defendant knew CCP did not provide the Navy the "Generator repair parts." The money Company 1 used to pay CCP was money Company 1 obtained from the Navy.

- In March 2017, defendant also directed Company 2 to pay a $12,850 invoice from CCP for "consulting services" purportedly for the Navy, even though defendant knew CCP did not provide the Navy any "Consulting Services." The money Company 2 used to pay CCP was money Company 2 obtained from the Navy.

- In June and July 2017, defendant conspired with WRIGHT and three other companies, including Company 1 and Company 2, to rig the bidding process for a subcontract being issued by Prime Contractor 1 for power generation equipment. Specifically, defendant and WRIGHT worked together to obtain

fake bids from Company 1, Company 2, and a third company, Company 3, that were significantly higher than CCP's bid to ensure the success of CCP's bid.

- From October 2017 through August 2019, defendant approved or directed Navy Employee 1 to approve invoices authorizing payment to Prime Contractor 1 for work purportedly performed by CCP related to seven task orders. Defendant approved or directed Navy Employee 1 to approve these invoices, even though defendant knew WRIGHT and CCP had not provided any equipment or services in connection with five of those task orders and only partially completed another task order. As a result of these false invoice approvals, the Navy paid Prime Contractor 1 at least $12,417,139.04, a majority of which defendant understood and knew would be paid to CCP.

- From September 2017 through July 2019, defendant worked with WRIGHT to rig the Navy's contracting process to ensure that CCP received the prime contract for power generation equipment. To do so, defendant and WRIGHT conspired to falsify Past Performance Questionnaires ("PPQ") for a task order under Prime Contractor 1's contract, including falsely describing CCP's work on one task order before stating that CCP's "management of funds and required administrative work was outstanding. [CCP] exceeded all expectations in all areas." In truth, as defendant well knew, WRIGHT and CCP had not performed the task order. Due in part to defendant's false statements in the PPQs regarding CCP's performance, the Navy awarded CCP the prime contract.

In exchange for these acts by defendant, WRIGHT provided defendant at least the following cash and/or money order payments: (1) $1,500 in money orders in April 2017; (2) $850 in cash to defendant's friend who provided services to defendant in June 2017; and (3) $8,000 in cash in December 2017.  Further, in exchange for these acts by defendant, WRIGHT also made the following payments to the Sporting Goods Company and a Club Soccer Team at defendant's direction:

| Date | Account Holder | Entity | Amount |
|------|----------------|--------|--------|
| March 13, 2018 | CCP | Sporting Goods Company | $9,797.85 |
| December 10, 2018 | CCP | Sporting Goods Company | $14,989.25 |
| January 31, 2020 | CCP | Club Soccer Team | $10,000.00 |
| February 5, 2020 | CCP | Sporting Goods Company | $34,689.83 |
| | | **Total** | $64,476.93 |

SENTENCING FACTORS

10.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

11.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 14 | [U.S.S.G. § 2C1.1(a)(1)] |
| More than One Bribe: | +2 | [U.S.S.G. § 2C1.1(b)(1)] |
| Value of the Bribes: | +6 | [U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(D)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

12.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

13.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

14.   Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.   The right to persist in a plea of not guilty.

     b.   The right to a speedy and public trial by jury.

     c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

     d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF STATUTE OF LIMITATIONS

15.    Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offense to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offense to which defendant is pleading guilty because of the expiration of the statute of limitations for that offense prior to the filing of the information alleging that offense; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offense to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

## WAIVER OF APPEAL OF CONVICTION

16.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to

appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

17.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 24 months' imprisonment, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.  This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

//

//

<u>WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS</u>

19.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Defendant further agrees that this paragraph of the agreement is severable.  Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement.  Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

1                        EFFECTIVE DATE OF AGREEMENT

2        21.   This agreement is effective upon signature and execution of

3   all required certifications by defendant, defendant's counsel, and an

4   Assistant United States Attorney.

5                           BREACH OF AGREEMENT

6        22.   Defendant agrees that if defendant, at any time after the

7   signature of this agreement and execution of all required

8   certifications by defendant, defendant's counsel, and an Assistant

9   United States Attorney, knowingly violates or fails to perform any of

10  defendant's obligations under this agreement ("a breach"), the USAO

11  may declare this agreement breached.  All of defendant's obligations

12  are material, a single breach of this agreement is sufficient for the

13  USAO to declare a breach, and defendant shall not be deemed to have

14  cured a breach without the express agreement of the USAO in writing.

15  If the USAO declares this agreement breached, and the Court finds

16  such a breach to have occurred, then: (a) if defendant has previously

17  entered a guilty plea pursuant to this agreement, defendant will not

18  be able to withdraw the guilty plea, and (b) the USAO will be

19  relieved of all its obligations under this agreement.

20          COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

21                            OFFICE NOT PARTIES

22       23.   Defendant understands that the Court and the United States

23  Probation and Pretrial Services Office are not parties to this

24  agreement and need not accept any of the USAO's sentencing

25  recommendations or the parties' agreements to facts or sentencing

26  factors.

27       24.   Defendant understands that both defendant and the USAO are

28  free to: (a) supplement the facts by supplying relevant information

                                    13

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  This paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in this agreement.

25.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

26.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

14

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4       27.   The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10 TODD BLANCHE
   Deputy Attorney General

11
   BILAL A. ESSAYLI
12 First Assistant United States
   Attorney

13

14  *Ian V. Yanniello*                          3/2/2026
   _____             _____
15 THOMAS F. RYBARCZYK                         Date
   IAN V. YANNIELLO
16 Assistant United States Attorney

                                              2/25/2026
17 _____             _____
   JUAN CARLOS ARAGON                          Date
18 Defendant

                                              February 25, 2026
19 _____             _____
   CHARLES L. KREINDLER                        Date
20 Attorney for Defendant JUAN CARLOS
   ARAGON

21

22

23

24

25

26

27

28

                              15

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____         2/25/2026
JUAN CARLOS ARAGON                       Date
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JUAN CARLOS ARAGON's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____              February 25, 2026
CHARLES L. KREINDLER                          _____
Attorney for Defendant JUAN CARLOS            Date
ARAGON

# EXHIBIT A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE CENTRAL DISTRICT OF CALIFORNIA

10 | UNITED STATES OF AMERICA,          | CR No.

11 |             Plaintiff,              | I N F O R M A T I O N

12 |             v.                      | [18 U.S.C. § 201(b)(2)(B): Bribery
                                           of a Public Official]
13 | JUAN CARLOS ARAGON,

14 |             Defendant.

15

16        The United States of America charges

17                 [18 U.S.C. § 201(b)(2)(B)]

18 A.    INTRODUCTORY ALLEGATIONS

19        At times relevant to this Information:

20        1.   The Naval Facilities Engineering and Expeditionary Warfare

21 Center was a command within the Department of the Navy (the "Navy")

22 that included the Mobile Utilities Support Equipment group ("Muse")

23 located in Port Hueneme, California.  Muse was responsible for

24 providing management, technical, and logistics support for power

25 systems, including large generators, for certain United States

26 Department of Defense operations around the world, including active

27 combat zones.

28

2.    To accomplish its mission, Muse personnel would engage with a prime contractor to procure goods and services.  In 2015, the Navy awarded Prime Contractor 1 a contract for products and services related to critical power support, including the "purchase, installation, renovation, alterations, and repair" of the Navy's critical power systems and supporting facilities.  Under the contract, Prime Contractor 1 could issue task orders to subcontractors, which were essentially contracts to procure specific products and/or services.

3.    Defendant JUAN CARLOS ARAGON was enlisted in the Navy until approximately 2021, when he retired.  Throughout various points from 2005 through 2019, defendant ARAGON held various positions at Muse, including supervisory positions, including being Deputy Program Manager at MUSE, that allowed defendant ARAGON to exercise considerable influence over contractual matters, including prime contracts and task orders.

4.    CORY TAYLOR WRIGHT was enlisted in the Navy from February 1997 through May 2017, when he retired.  Throughout various points during the period 2005 through 2017, WRIGHT worked for Muse.

5.    When WRIGHT was nearing retirement in or around late-2016, WRIGHT created the company, C&C Power Solutions LLC ("CCP"), which sought and obtained subcontracts related to power generation for the Navy from Prime Contractor 1.  In 2019, the Navy awarded CCP a prime contract related to power generation.

B.    THE SCHEME

6.    In March 2017, defendant ARAGON directed Company 1 and Company 2 to pay CCP for work and services that CCP never performed using money the companies obtained from the Navy.

2

7.    In June and July 2017, defendant ARAGON conspired with WRIGHT and three other companies, including Company 1 and Company 2, to rig the bidding process for a subcontract being issued by Prime Contractor 1 for power generation equipment.  The co-conspirators rigged the bidding process to ensure that CCP received the subcontract.

8.    From October 2017 through August 2019, defendant ARAGON approved or directed Navy Employee 1 to approve invoices authorizing payment to Prime Contractor 1 for work purportedly performed by CCP related to seven task orders.  Defendant ARAGON approved or directed Navy Employee 1 to approve these invoices, even though defendant ARAGON knew WRIGHT and CCP had not provided any equipment or services in connection with five of those task orders and only partially completed another task order.  As a result of these false invoice approvals, the Navy paid Prime Contractor 1 at least $12,417,139.04, a majority of which defendant ARAGON understood and knew would be paid to CCP.

9.    From September 2017 through July 2019, defendant ARAGON worked with WRIGHT to rig the Navy's contracting process to ensure that CCP received the prime contract for power generation equipment. To do so, defendant ARAGON and WRIGHT conspired to falsify Past Performance Questionnaires ("PPQ") for a task order under Prime Contractor 1's contract, including falsely describing CCP's work on one task order before stating that CCP's "management of funds and required administrative work was outstanding.  [CCP] exceeded all expectations in all areas."

10.    In exchange for these acts by defendant ARAGAON, WRIGHT provided defendant ARAGON kickbacks and other bribes as directed by

3

defendant ARAGON, including those made in the name of a club soccer team ("Club Soccer Team") associated with defendant ARAGON and a sporting goods company.  In total, from 2017 through February 5, 2020, defendant ARAGON received a total of at least $74,826.93 in kickbacks and bribes.

C.    THE BRIBERY

11.  Beginning in or around 2017 and continuing until on or about February 5, 2020, in Ventura County, within the Central District of California, and elsewhere, defendant ARAGON, a public official, namely, Deputy Program Manager at MUSE and a Navy Career Analyst, directly and corruptly demanded, sought, received, and accepted something of value, in return for being influenced to commit and aid in committing, colluding in, and allowing, a fraud on the United States.  Specifically, defendant ARAGON corruptly demanded and directed that the Sporting Goods Company receive $34,689.83 on or

///
///
///
///
///
///
///
///
///
///
///
///
///

about February 5, 2020, from WRIGHT and CCP, in exchange for defendant ARAGON aiding WRIGHT and CCP in committing fraud on the Navy, namely, falsely billing the Navy, bid-rigging, and falsely certifying and causing others to falsely certify the completion of contracts for the benefit WRIGHT and WRIGHT's company, CCP.

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney


IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

THOMAS F. RYBARCZYK
Assistant United States Attorney
Chief, Public Corruption and Civil
Rights Section